IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
5:12-CV-636-BO

| | | |
|---|---|---|
| WESTCHESTER SURPLUS LINES INSURANCE COMPANY, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | **ORDER** |
| CLANCY & THEYS CONSTRUCTION COMPANY, | ) ) ) | |
| Defendant. | ) ) | |

This case comes before the court on the motion (D.E. 71) by defendant Clancy & Theys Construction Company ("Clancy") to compel production of documents from plaintiff Westchester Surplus Lines Insurance Company ("Westchester"). The motion has been fully briefed and referred to the undersigned for disposition pursuant to 28 U.S.C. § 636(b)(1)(A). (*See* Minute Entry following D.E. 81). For the reasons set forth below, the motion will be allowed in part and denied in part.

## BACKGROUND

### I. PRE-LITIGATION PROCEEDINGS

Clancy, a construction company, was in a joint venture that served as the general contractor for a student housing project in Raleigh, North Carolina. Clancy purchased an insurance policy issued by Westchester relating to the project. In September 2011, foundation settlement problems developed on the project. On 15 September 2011, Clancy notified its insurance broker of the settlement problems, by which it apparently believed it was submitting a claim under the policy to Westchester. Westchester's lead adjuster, Daniel Frazier ("Frazier"), requested that Clancy provide additional information about the matter.

On 18 January 2012, a Clancy officer wrote Westchester a letter asking it to finalize its investigation and issue a coverage opinion. (18 Jan. 2012 Ltr. (D.E. 72-2) 1)). The letter states that it was written "in an effort to avoid litigation—both with the project participants [*e.g.*, subcontractors] and our carriers. It is not our desire to litigate any portion of this loss." (*Id.* at 2). Clancy copied three of its attorneys on the email transmitting the letter to Westchester. (D.E. 78-4 at 2).

There ensued a series of exchanges between the parties. On 26 March 2012, counsel for Clancy wrote Westchester asking it to "immediately assume Clancy's defense and become an active participant in resolving this matter in mediation [with the subcontractors]." (D.E. 72-3 at 2). The letter further requested that Westchester issue a coverage determination if it elected not to assume Clancy's defense and stated that Clancy was "writing this letter in an effort to avoid litigation." (*Id.* at 3). Westchester prepared correspondence dated 14 May 2012, provided to Clancy informally later that month, in which it explained its position that Clancy had no coverage under the policy because, among other reasons, the joint venture, as opposed to Clancy, was not an insured under the policy. (D.E. 72-4 at 20-24). Clancy's counsel responded by letter dated 14 June 2012 explaining Clancy's view on coverage. (*Id.* at 26-33). On 15 August 2012, Westchester sent a letter to Clancy's counsel stating that it had "re-evaluated its tentative coverage position" and would continue to investigate the claim subject to reservation of all its rights. (*Id.* at 37). Finally, on 12 September 2012, Clancy's counsel wrote Westchester with a final demand for a coverage determination and gave notice of bad faith, threatening suit. (12 Sept. 2012 Ltr. (D.E. 72-5)).

## II. LITIGATION PROCEEDINGS

On 28 September 2012, Westchester commenced this case seeking a declaratory judgment that it has no duty to defend or indemnify Clancy or the joint venture under the policy. (Compl. (D.E. 1)). Clancy denied the material allegations of the complaint and asserted counterclaims for breach of contract and bad faith. (Ans. & Countercl. (D.E. 22)).

On 13 March 2013, Clancy served on Westchester its first set of requests for production of documents (D.E. 72-6). While Westchester produced a number of documents in response to the requests, it withheld others on work product, attorney-client privilege, and other grounds. (*See* Resp. to Prod. Reqs. (D.E. 72-7)). Westchester produced an initial privilege log (D.E. 72-8) and later a superseding, supplemental privilege log (D.E. 72-14).

After attempts to resolve disputes over Westchester's production were unsuccessful, notwithstanding additional production by Westchester, Clancy filed the instant motion to compel, which both parties briefed. (D.E. 72, 77). On 28 October 2013, the court entered an order (D.E. 86) requiring Clancy to supplement its memorandum to clarify ambiguities in its submissions. Clancy has now filed a supplemental memorandum (D.E. 104) and Westchester a supplemental memorandum (D.E. 106) in response.

By its motion, Clancy seeks production of the documents listed in Exhibit P (D.E. 72-16) to its motion. They can be divided into three groups: Westchester's claim file, its Claims Loss Report ("CLR"), and communications among four designated Westchester employees—Frazier, Larry Hinkel ("Hinkel"), Richard Mastronardo ("Mastronardo"), and Bryan Doyle ("Doyle")[1]—

---

[1] Notwithstanding Clancy's inclusion in Exhibit P of Doyle as the fourth person whose communications it seeks (Ex. P., cat. no. 3), in its memorandum it lists Robert Owens ("Owens") as the fourth person. (Clancy's Mem. 8, 9 (misidentifying "Exhibit P" as "Exhibit R")). In its, supplemental memorandum, Clancy at two points again lists Owens as the fourth person. (Clancy's Supp. Mem. 5, 8; *see also* Westchester's Supp. Mem. 5). Clancy does so although the heading for the discussion of this group of documents lists the fourth person as Doyle, as in Exhibit P. (*Id.* at 5). The court will treat the listing in Exhibit P as controlling not only because of Clancy's repeated statements that it is seeking the documents listed in Exhibit P, but its attachment of Exhibit P to its proposed order

prior to 12 September 2012. As to communications, Clancy expressly seeks any attachments without redaction. (Ex. P). Although not clearly stated by Clancy, it appears to contend that these groups of documents were all requested in Production Requests Nos. 1 and 3 of its first set of requests for production. Production Request No. 1 seeks Westchester's claim file and Production Request No. 3 all communications by or to claims adjusters, claims management personnel, and others concerning the documentation of the evaluation of Clancy's claim and decisions regarding the claim. (Prod. Reqs. Nos. 1, 3).

## DISCUSSION

**I. STANDARDS GOVERNING DISCOVERY GENERALLY**

The Federal Civil Rules enable parties to obtain information by serving requests for discovery on each other, including requests for production of documents. *See generally* Fed. R. Civ. P. 26-37. Rule 26 provides for a broad scope of discovery:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense . . . . For good cause, the court may order discovery of any matter relevant to the subject matter involved in the action. Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence.

Fed. R. Civ. P. 26(b)(1). The rules of discovery, including Rule 26, are to be given broad and liberal construction. *Herbert v. Lando*, 441 U.S. 153, 177 (1979); *Nemecek v. Bd. of Governors*, No. 2:98-CV-62-BO, 2000 WL 33672978, at *4 (E.D.N.C. 27 Sep. 2000).

While Rule 26 does not define what is deemed relevant for purposes of the rule, relevance has been "'broadly construed to encompass any possibility that the information sought may be relevant to the claim or defense of any party.'" *EEOC v. Sheffield Fin. LLC*, No. 1:06CV889, 2007 WL 1726560, at *3 (M.D.N.C. 13 Jun. 2007) (quoting *Merrill v. Waffle*

---

allowing the motion (D.E. 72-18). Thus, the listing in Exhibit P appears to be the listing that most accurately reflects Clancy's intent as to the documents it seeks by its motion.

*House, Inc.*, 227 F.R.D. 467, 473 (N.D. Tex. 2005)). The district court has broad discretion in determining relevance for discovery purposes. *Watson v. Lowcountry Red Cross*, 974 F.2d 482, 489 (4th Cir. 1992). The party resisting discovery bears the burden of establishing the legitimacy of its objections. *Brey Corp. v. LQ Mgmt., L.L.C.*, No. AW-11-cv-00718-AW, 2012 WL 3127023, at *4 (D. Md. 26 Jul. 2012) ("In order to limit the scope of discovery, the 'party resisting discovery bears the burden of showing why [the discovery requests] should not be granted.'") (quoting *Clere v. GC Servs., L.P.*, No. 3:10-cv-00795, 2011 WL 2181176, at *2 (S.D. W. Va. 3 June 2011))). In addition, the court may limit the extent of discovery otherwise allowable where "the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues." Fed. R. Civ. P. 26(b)(2)(C)(iii); *see also Basile Baumann Prost Cole & Assocs., Inc. v. BBP & Assocs. LLC,* No. WDQ-11-2478, 2013 WL 1622001, at *3 (D. Md. 9 Apr. 2013) ("Further, '[a]ll discovery is subject to the [proportionality] limitations imposed by Rule 26(b)(2)(C).'" (quoting Fed. R. Civ. P. 26(b)(1))).

Rule 34 governs requests for production of documents. *See generally* Fed. R. Civ. P. 34. A party asserting an objection to a particular request "must specify the part [to which it objects] and permit inspection of the rest." Fed. R. Civ. P. 34(b)(2)(C). In addition, where the objection asserted is one of privilege, a party must expressly assert it in response to the particular discovery request involved and serve with its discovery responses a privilege log in conformance with Fed. R. Civ. P. 26(b)(5)(A). Failure to timely serve a privilege log meeting the requirements of Rule 26(b)(5)(A) may be deemed a waiver of the privilege otherwise claimed. *Mezu v. Morgan State Univ.*, 269 F.R.D. 565, 577 (D. Md. 2010) ("Absent consent of the

adverse party, or a Court order, a privilege log (or other communication of sufficient information for the parties to be able to determine whether the privilege applies) must accompany a written response to a Rule 34 document production request, and a failure to do so may constitute a forfeiture of any claims of privilege.").

Rule 37 allows for the filing of a motion to compel discovery responses. *See* Fed. R. Civ. P. 37(a)(3)(B)(iv).

## II. WESTCHESTER'S CLAIMS OF WORK PRODUCT PROTECTION AND ATTORNEY-CLIENT PRIVILEGE

Westchester asserts the work product doctrine and attorney-client privilege as the basis for withholding documents in each of the three groups of documents at issue. The court will therefore address these claims first, before turning to a separate discussion of each of these groups.

### A. Work Production Protection

#### 1. *Applicable Legal Principles*

The work product doctrine, as codified in Rule 26(b)(3)(A) of the Federal Rules of Civil Procedure, is based on the Supreme Court's seminal decision in *Hickman v. Taylor*, 329 U.S. 495 (1947), and protects against the disclosure of certain materials "prepared in anticipation of litigation or for trial by or for [a] party or its representative (including the . . . party's attorney, consultant, surety, indemnitor, insurer, or agent)." Fed. R. Civ. P. 26(b)(3)(A). The proponent of work product protection has the burden of establishing its applicability. *Sandberg v. Va. Bankshares, Inc*., 979 F.2d 332, 355 (4th Cir. 1992). "The party seeking protection must make this showing with a specific demonstration of facts supporting the requested protection, preferably through affidavits from knowledgeable persons." *E.I. Du Pont de Nemours and Co. v.*

*Kolon Industries, Inc.,* No. 3:09cv58, 2010 WL 1489966, at *3 (E.D. Va. 13 Apr. 2010) (internal quotations omitted).

"'The application of the work product doctrine is particularly difficult in the context of insurance claims.'" *Gilliard v. Great Lakes Reinsurance (U.K.) PLC*, No. 2:12–cv–00867–DCN, 2013 WL 1729509, at *2 (D.S.C. 22 Apr. 2013) (quoting *Kidwiler v. Progressive Paloverde Ins. Co.*, 192 F.R.D. 536, 541–42 (N.D. W. Va. 2000)); *Schwarz & Schwarz of Va., L.L.C. v. Certain Underwriters at Lloyd's London*, No. 6:07cv00042, 2009 WL 1043929, at *2 (W.D. Va. 17 Apr. 2009) ("With respect to work product claims by insurance companies, '[t]he nature of the insurance business requires an investigation prior to the determination of the insured's claim.'") (quoting *State Farm Fire & Cas. Co. v. Perrigan*, 102 F.R.D. 235, 237 (W.D. Va. 1984)); *Miller v. Pruneda*, No. 3:02–CV–42, 2004 WL 3951292, at *5 (N.D. W. Va. 5 Nov. 2004) ("Because an insurance company is in the business of investigating claims, investigatory files are normally prepared in the ordinary course of the insurance company's business although the files were prepared with an eye toward reasonably foreseeable litigation."); *Pete Rinaldi's Fast Foods, Inc. v. Great Am. Ins. Cos.*, 123 F.R.D. 198, 202 (M.D.N.C. 1988) ("Because an insurance company has a duty in the ordinary course of business to investigate and evaluate claims made by its insureds, the claims files containing such documents usually cannot be entitled to work product protection."). "[T]here is no bright-line test for when work product protection applies for insurance companies, and instead courts must undertake a case-by-case analysis." *Botkin v. Donegal Mut. Ins. Co.,* No. 5:10cv00077, 2011 WL 2447939, at *3 (W.D. Va. 15 Jun. 2011). Generally, an insurance company is permitted to assert that there existed a reasonable threat of litigation such that the information prepared from that point forward could be considered "in anticipation of litigation" only after the insurance company has made a decision with respect to

the claim. *Pete Rinaldi's*, 123 F.R.D. at 202 ("[I]f the insurer argues it acted in anticipation of litigation before it formally denied the claim, it bears the burden of persuasion by presenting specific evidentiary proof of objective facts demonstrating a resolve to litigate."); *see also Botkin*, 2011 WL 2447939, at *3 (noting that the "pivotal point" in deciding when the activity changes from ordinary business to anticipation of litigation is "when the probability of litigation becomes 'substantial and imminent,' or stated otherwise, when litigation becomes 'fairly foreseeable'") (quoting *State Farm*, 102 F.R.D. at 237)); *Schwartz & Schwartz*, 2009 WL 1043929, at *3 (finding that work product production attached only after insurance company disclaimed coverage).

### 2. *Analysis*

Westchester claims work product protection for various documents created on and after 18 January 2012. The documents listed in the supplemental privilege log for which work product protection alone is expressly claimed are those in categories nos. 4 to 8, 22, and 27. Work product protection as well as the attorney-client privilege is expressly claimed with respect to the documents in categories nos. 9 to 21, 23, 25, and 26. The latest date for any document in the supplemental privilege log is 10 July 2012. (*See* Supp. Priv. Log 19, Bates Nos. 01-001389 to 01-001390). Clancy argues that Westchester is withholding on the basis of the work product doctrine other documents not listed in the supplemental privilege log.

Clancy challenges Westchester's claim of work product protection on the principal grounds that Westchester could not be deemed to have anticipated litigation until Clancy's 12 September 2012 bad faith letter. Westchester counters that Clancy's 18 January 2012 request for a coverage determination constituted a "veiled threat to sue Westchester," which, coupled with

8

Case 5:12-cv-00636-BR   Document 109   Filed 11/15/13   Page 8 of 19

Clancy's retention of counsel, gave it grounds to believe that litigation was imminent. (Westchester's Mem. 2).

The court does not find Westchester's argument persuasive. Indeed, as late as 15 August 2012, Westchester wrote to Clancy that it was re-evaluating its coverage position and would continue to investigate the claim. Thus, as of August of 2012, over six months after the January date that Westchester now asserts as the date it anticipated litigation, Westchester was still investigating and evaluating the claim in its ordinary course of business. The fact that Clancy's counsel assisted with preparation of the January 2012 letter does not dictate the conclusion that the prospect of litigation was then substantial and imminent. *Connecticut Indem. Co. v. Carrier Haulers, Inc.*, 197 F.R.D. 564, 571 (W.D.N.C. 2000) (denying work product protection to documents created by insurance company prior to denial of claim and finding that "neither retaining legal counsel nor failing to do so is conclusive proof of whether a party has 'resolved to litigate'"). At his deposition, Frazier confirmed that Westchester did not anticipate litigation until Clancy's 12 September 2012 bad faith letter. (*See* Frazier Dep. (D.E. 72-1) 85:14 to 88:22).

The court concludes that Westchester has not met its burden of establishing the applicability of work product protection to documents created before 12 September 2012. With respect to the documents for which work product protection is claimed in the supplemental privilege log, which, again, were dated as late as 10 July 2012, the claim of such protection will therefore be overruled. To the extent, if any, that Westchester is withholding any documents sought in Exhibit P that were generated between 10 July 2012 and 11 September 2012 on the basis of work product protection, Westchester waived such protection for these documents by not including them in the supplemental privilege log. In sum, the court will allow the portion of

Clancy's motion seeking production of the pre-12 September 2012 documents to the extent they are included in Exhibit P and are being withheld on work product grounds.

**B.     Attorney-Client Privilege**

### 1.     *Applicable Legal Principles*

The attorney-client privilege exists when (1) there is an attorney-client relationship, (2) the communication in question relates to a fact that the attorney learned from the client, outside the presence of strangers, for the purpose of securing a legal opinion or legal services, and (3) the privilege has been claimed and not waived. *See Hawkins v. Stables*, 148 F.3d 379, 383 (4th Cir. 1998). The attorney-client privilege is designed "to encourage full and frank communications between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice." *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981). "The burden is on the proponent of the attorney-client privilege to demonstrate its applicability." *United States v. Jones*, 696 F.2d 1069, 1072 (4th Cir. 1982). If a party demonstrates that the attorney-client privilege applies, all communications between attorney and client are entitled to absolute and complete protection from disclosure. *In re Allen*, 106 F.3d 582, 600 (4th Cir. 1997).

Similar to work product, application of the attorney-client privilege can be complicated in the context of insurance claims. In *Allen*, 106 F.3d at 602-03, the Fourth Circuit instructed that "not all communications between an attorney and client during attorney-conducted investigations constitute legal work entitled to attorney-client privilege. For example, no privilege attaches when an attorney performs investigative work in the capacity of an insurance claims adjuster, rather than as a lawyer." *Id.*; *Connecticut Indem. Co.*, 197 F.R.D. at 571 (holding that because attorney's involvement in fact-finding or investigation of insurance claim was related to

rendition of legal services, attorney-client privilege applied). In addition, communications prepared in the ordinary course of business cannot be cloaked with the privilege merely by sending copies to in-house counsel. *See Brainware, Inc. v. Scan-Optics, Ltd.*, No. 3:11cv755, 2012 WL 2872812, at *3 (E.D. Va. 12 Jul. 2012) ("The fact that an attorney is copied on these emails does not make them about 'legal matters.'").

### 2. *Analysis*

Westchester expressly claims the attorney-client privilege alone with respect to the document listed in category no. 24 in Exhibit P and the attorney-client privilege along with work product protection with respect to the documents listed in categories nos. 9 to 21, 23, 25, and 26. Clancy argues that Westchester is withholding on the basis of attorney-client privilege other documents not listed in the supplemental privilege log.

Clancy challenges Westchester's claims of attorney-client privilege on the grounds, among others, that the documents were prepared in the ordinary course of business and merely copied to in-house counsel and that in-house counsel was performing investigative work. Westchester maintains that the documents "relate to, constitute, and describe legal advice given and received" and are not discoverable. (Westchester's Mem. 7). The nature of each allegedly privileged document is described more particularly in the supplemental privilege log.

The court cannot determine definitively from the record whether the documents for which Westchester claims the attorney-client privilege in the supplemental privilege log are, in fact, protected by the privilege. Westchester will therefore be required to submit these documents for *in camera* inspection. To the extent, if any, that Westchester is withholding any documents sought in Exhibit P on the grounds of attorney-client privilege that are not listed in the supplemental privilege log, it has waived the privilege and will be required to produce them.

## III. WESTCHESTER'S CLAIM FILE

Clancy seeks Westchester's "entire" claim file, which is maintained in electronic form, including all "logs, diaries, evaluations, substantive notes, internal communications, and reports" and "all information contained under tabs titled 'Master,' 'Section,' 'Comments,' 'Diary,' 'Documents,' and any other hyperlinks to other documents or information." (Ex. P, cat. no. 1). Although listed as a single category, category no. 1, in Exhibit P, the claim file apparently contains other documents listed in Exhibit P, including the CLR; at least some of the communications among Frazier, Hinkel, Mastronardo, and Doyle; and the documents in categories nos. 22, 26, and 27. The claim file may also contain other documents not specifically identified in Exhibit P.

Westchester opposes Clancy's motion with respect to the claim file, in part, on the grounds that portions of it are protected from disclosure by the work product doctrine and/or the attorney-client privilege, including the document in category no. 26 (*see* Westchester's Supp. Mem. 3[2]; Supp. Priv. Log 19 (entry for Bates No. 01-001546)). As discussed, the claim of work product protection is meritless, and the purportedly attorney-client privileged documents listed in the supplemental privilege log will be reviewed *in camera*.

Westchester also argues that it previously produced portions of the claim file. Obviously, to the extent it has done so, it will not be required to produce them again.

Lastly, Westchester argues that it need not produce portions of the claim file because Clancy already has the information in such portions, apparently from other materials produced in discovery. The happenstance that Clancy already has such information, even if true, is not a valid ground for withholding those portions of the claim file. *See, e.g., Puccio v. Sclafani*, No.

---

[2] Westchester misidentifies this document as the last entry in its supplemental privilege log and cites to a nonexistent document in discussing it (*i.e.*, D.E. 102-3).

12

12–61840–CIV, 2013 WL 4068782, at *2 (S.D. Fla. 12 Aug. 2013) ("'[T]he fact that [a party's] counsel] may already possess . . . some of the documents and information included in [his] discovery requests . . . does not excuse the [responding party's] failure to fully respond to the discovery requests.'" (quoting *Rivers v. Asplundh Tree Expert Co.*, No. 5:08cv61/RS/EMT, 2008 WL 5111300, at *4 (N.D. Fla. 3 Dec. 2008))). In sum, Westchester will be required to produce the portions of its claim file not already produced, subject only to preserved claims of attorney-client privilege.

## IV. CLR

Clancy seeks the CLR, "in its original and amended forms," which it characterizes as providing a good summary of the claim. (Ex. P, cat. no. 2). While the CLR itself is listed as a separate category in Exhibit P, category no. 2, Westchester contends it is made up of the documents in categories nos. 4 to 8.

Westchester states that it "has produced all of the information contained within the [CLR] except for information that is protected from disclosure by the work product doctrine and attorney-client privilege." (Westchester's Supp. Mem. 5). It goes on to say, however, that it has listed the CLR "and all copies of it" on its privilege log and that the CLR "is protected from disclosure, and Clancy's motion to compel the [CLR] should be denied." (*Id.*). In these latter statements, there is no mention of portions of the CLR being producible. Thus, on the one hand, Westchester states that portions of the CLR are producible and have been produced and, on the other, that the entire CLR is protected from disclosure.

The court deems Westchester to be stating that it has withheld portions of the CLR because, even though they are not protected from disclosure, Clancy already has the information contained in them from other materials. As in the case of the claim file, the fact that Westchester

already has any such information, even if true, is not a valid objection to producing the portions of the CLR that are not subject to the work product doctrine or attorney-client privilege.

Further, while Westchester cites to both the attorney-client privilege and the work product doctrine as protecting the CLR, the supplemental privilege log indicates that it asserts only the work product doctrine as to the documents it claims make up the CLR. (*See* Westchester's Supp. Mem. 5; Supp. Priv. Log 1-3 (entries for Bates Nos. 01-000556 to 01-000557, 01-000561 to 01-000562, 01-000569 to 01-000570, 01-000575 to 01-000576, 01-000582 to 01-000583, 01-000556)). As previously discussed, the claim of work product protection is meritless. Westchester will accordingly be ordered to produce the CLR, provided that if it should determine that portions of it are subject to a claim of privilege preserved in its supplemental privilege log, it may submit those portions for *in camera* inspection.

V. COMMUNICATIONS AMONG WESTCHESTER PERSONNEL

This group of documents sought by Clancy consists of "[a]ll communications between Daniel Frazier, Larry Hinkle [sic], Richard Mastronardo and/or Bryan Doyle, prior to September 12, 2012." (Ex. P, cat. no. 3). This group is listed as category no. 3 in Exhibit P, but it also includes categories nos. 4 to 21 and 23 to 25 and possibly additional documents not listed.

Westchester contends that it has already produced all documents in this group that are properly producible and that it has withheld documents subject to the work product doctrine and/or the attorney-client privilege. The court will not, of course, require Westchester to make the same production twice, is overruling the claim of work product protection, and will permit *in camera* review of documents as to which the claim of attorney-client privilege has been preserved in the supplemental privilege log.

Westchester also argues that this group of documents includes some not encompassed by any of Clancy's production requests. The court disagrees.

Production Request No. 3 sought: "[a]ll Communications by or to claims adjusters, claims management personnel, in-house consultants, in-house counsel, and any other employee or outside consultant Westchester or any other company of Westchester *concerning the Documentation of evaluation of the claim and all Documentation of decisions taken with respect to the claim*." (Prod. Req. No. 3) (emphasis added). The production requests define "Communication" and "Documentation" expansively to include "all tangible and electronic forms of human expression, however recorded and reproduced," providing numerous examples. (Prod. Reqs. 3, Definition No. 1).

Westchester argues that Production Request No. 3 is narrower than the group of communications Clancy now seeks because the emphasized language—"concerning the Documentation of evaluation of the claim and all Documentation of decisions taken with respect to the claim"—limits the production request to only substantive communications, whereas the group as described in Exhibit P does not. Westchester elaborates that its personnel store what they deem to be substantive emails in its Apollo System. Emails not deemed by the personnel to be substantive are not transferred to the Apollo System, but are retained in the regular email system, Outlook. Thus, the argument goes, only emails in the Apollo System are kept in the ordinary course of business and are producible. In response to Production Request No. 3, Clancy contends, and Westchester does not refute, that it produced only documents in the Apollo System and did not look for responsive communications in Outlook. (*See* Clancy's Supp. Mem. 5-8 (citing Hinkel Dep. 47:8 to 49:12); Westchester's Supp. Mem. 5-7 (stating, *e.g.* at p. 7,

"Westchester has complied with its discovery obligations by producing all non-privileged communications contained in the Apollo System")).

The court believes Westchester is interpreting Production Request No. 3 too narrowly. The clear intent of the request is to encompass any communications generated in the course of consideration of Clancy's claim, whether or not an adjuster considering the claim deemed them to have substantive value. Substantive value for evaluation of a claim is not synonymous with relevance for purposes of discovery in a lawsuit. Westchester's production obligation was not limited to documents kept in the ordinary course of business, but to documents within its possession, custody, or control. *See* Fed. R. Civ. P. 34(a)(1). Indeed, it is difficult to see how Westchester fulfilled its obligation to make reasonable inquiry for the communications sought in Production Request No. 3 by simply acquiescing in its personnel's determination of substantive value without conducting, through counsel, a review of the emails and other documents in Outlook for discovery purposes.[3] *See* Fed. R. Civ. P. 26(g)(1).

While category 2 in Exhibit P does not expressly limit the requested communications to those concerning Clancy's claim, that limitation is necessarily implicit in it given the scope of Production Request No. 3. Therefore, subject to its *in camera* review of the communications sought in this group as to which Westchester has claimed attorney-client privilege in its supplemental privilege log, Westchester will be required to produce the requested communications among Westchester's personnel concerning Clancy's claim.

---

[3] Westchester also candidly admits that because Production Request No. 3 sought, in part, communications with its in-house counsel, it objected "and refused to produce any materials." (Westchester's Supp. Mem. 6). Its action appears to be in clear violation of Rule 34, which provides that "[a]n objection to part of a request must specify the part and *permit inspection of the rest*." Fed. R. Civ. P. 34(b)(2)(C) (emphasis added).

## VI. EXPENSES

The court finds that an award of expenses to either party would be unjust. *See* Fed. R. Civ. P. 37(a)(5). The court therefore declines to award any expenses incurred in connection with the motion.

## CONCLUSION

For the foregoing reasons, IT IS ORDERED that Clancy's motion (D.E. 71) to compel is ALLOWED IN PART and DENIED IN PART on the following terms:

1. Westchester shall produce, by 27 November 2013, the following documents within its possession, custody, or control, subject to the exceptions set out in paragraph 2 below:

   a. Westchester's entire claim file, including all logs, diaries, evaluations, substantive notes, internal communications, and reports, and all portions of the tabbed sections thereof, including but not limited to all documents in categories nos. 22, 26, and 27 in Exhibit P;

   b. The CLR, in its original and amended forms, including but not limited to all documents in categories nos. 4 to 8 in Exhibit P;

   c. All communications among Daniel Frazier, Larry Hinkel, Richard Mastronardo, and/or Bryan Doyle prior to 12 September 2012 concerning the claim by Clancy at issue in this case, including but not limited to all documents in categories nos. 4 to 21 and 23 to 25 in Exhibit P; and

   d. Attachments to all emails or other communications included in the foregoing subparagraphs a, b, or c.

2. Westchester may withhold from the production otherwise required in paragraph 1 above only the following:

a. Documents or portions thereof as to which Westchester has asserted a claim for attorney-client privilege in its supplemental privilege log; and

b. Copies of any documents previously produced in discovery in this case, provided they were produced in the same form (*i.e.*, electronic, paper) and organized in the same manner as they would be required to be produced pursuant to paragraph 1 but for their prior production.

3. Westchester shall serve with the production ordered herein a supplemental response to Clancy's requests for production of documents, duly signed by counsel, identifying by Bates number each additional document being produced and each production request and each category in Exhibit P to which the document is responsive. The supplemental response shall also identify by Bates number each document being withheld from production on the grounds that it is protected by the attorney-client privilege and the production request and category in Exhibit P to which the document relates. For each document being withheld from production on the grounds that Westchester has previously produced a copy (in the same form and organized in the same manner), Westchester shall identify by Bates number the copy it previously produced and the production request and category in Exhibit P to which the document relates.

4. Any documents that Westchester withholds from production based on a claim of attorney-client privilege pursuant to paragraph 2.a above shall be submitted to the Clerk's office in electronic form by 27 November 2013 for *in camera* review. Westchester shall contact Civil Case Manager Macy Fisher (919-645-1700) for specific instructions on submission.

5. Westchester may not withhold from the production otherwise ordered herein any documents on the basis of work product protection, whether or not such protection is claimed in

the supplemental privilege log, or on the basis of attorney-client privilege if such privilege is not claimed in the supplemental privilege log.

6.      Each party shall bear its own costs and expenses incurred in connection with this motion.

SO ORDERED, this 14th day of November 2013.

_____
James E. Gates
United States Magistrate Judge