IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:12-CV-636-BO

WESTCHESTER SURPLUS LINES )
INSURANCE COMPANY, )
    Plaintiff, )
     )
v. ) **ORDER**
CLANCY & THEYS CONSTRUCTION )
COMPANY, )
    Defendant. )

This cause comes before the Court on plaintiff's motion for summary judgment and defendant's motion for partial summary judgment. A hearing was held on these matters before the undersigned on March 21, 2014, at Raleigh, North Carolina. Following the hearing, the Court ordered that the parties brief an additional issue. Having considered the motions, responses, replies, and additional briefing in this matter, the Court grants in part and denies in part plaintiff's motion and denies defendant's motion for partial summary judgment. Having further considered each party's motion to strike expert reports, the Court denies both motions to strike.

## BACKGROUND

This is a professional liability insurance coverage dispute arising out of a foundation design error on the Stanhope Raleigh Student House Project in Raleigh, North Carolina. Defendant (Clancy) served pursuant to a joint venture agreement with another participant as the general contractor on the Stanhope Project. Plaintiff (Westchester), an insurance company, filed this declaratory judgment action seeking a declaration that it is not obligated to defend or indemnify Clancy or the joint venture from a purported claim arising out of the project.

Westchester further alleges that no "claim" has been lodged against Clancy arising out of the foundation design error, and that even if a proper claim had been brought it would be barred by exclusions within the policy. Westchester asserts an alternative claim for breach of contract against Clancy, alleging that if a claim against the joint venture is construed as a claim against Clancy, then the joint venture's settlement of the claim constitutes a breach of the policy and a compromise of plaintiff's subrogation rights.

Clancy has filed breach of contract and tortious breach of contract counterclaims against Westchester. Clancy alleges that Westchester breached the policy by failing to timely investigate a claim, failing to timely issue a coverage opinion, failing to properly defend defendant for the allegation made, failing to assist defendant in mitigating damages, and failing to indemnify Clancy for covered losses. Clancy further alleges that Westchester tortiously breached its contract as it was aware of a valid claim and acted in willful, wanton disregard of its duty to defend and indemnify defendant, entitling defendant to extra-contractual damages.

Westchester has moved for summary judgment on all of its claims as well as Clancy's counterclaims. Clancy has moved for partial summary judgment on its breach of contract counterclaim only.

## DISCUSSION

### MOTIONS FOR SUMMARY JUDGMENT

A motion for summary judgment may not be granted unless there are no genuine issues of material fact for trial and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If that burden has been met, the non-moving party must then come forward and establish the specific material facts

in dispute to survive summary judgment. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 588 (1986). In determining whether a genuine issue of material fact exists for trial, a trial court views the evidence and the inferences in the light most favorable to the nonmoving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007). However, "[t]he mere existence of a scintilla of evidence" in support of the nonmoving party's position is not sufficient to defeat a motion for summary judgment; "there must be evidence on which the [fact finder] could reasonably find for the [nonmoving party]." *Anderson v. LibertyLobby, Inc.*, 477 U.S. 242, 252 (1986). "Conclusory or speculative allegations do not suffice." *Thompson v. Potomac Elec. Power Co.*, 312 F.3d 645, 649 (4th Cir. 2002) (citation omitted).

The relevant undisputed facts as submitted by the parties are as follows. Clancy and Brasfield & Gorie, LLC served as general contractors on the Stanhope Project pursuant to a joint venture agreement dated November 15, 2010. The joint venture was formed "for the purpose of providing Construction Management Services for the preconstruction and construction of Stanhope Student Housing project." Cmp. Ex. B. The Brasfield/Clancy joint venture contracted with Capstone Development Corporation to build the Stanhope project as of January 28, 2011. Cmp. Ex. A1-5. Clancy obtained from Westchester an environmental insurance policy with joint venture and professional liability endorsements. Cmp. Ex. G. The policy period began May 1, 2011, and ended May 1, 2012, and provided Clancy with $5,000,000 in professional liability coverage as well as pollution coverage. *Id.* The joint venture endorsement was purchased by Clancy for a $1,000 premium and it served to modify provisions defining "who is an insured" on the policy and struck blanket language excluding joint ventures from coverage. *Id.* The joint venture endorsement specifically provides that "You are also an insured with regard to your participation in a joint venture that is not designated in the Declarations, but solely with respect

3

to your liability arising from the performance of "your work" under the respective joint venture." *Id.* at 2.

In September 2011, it became apparent that the east wing of the Stanhope building was leaning due to differential settlement. The design and construction of the foundation work on the project had been subcontracted to GeoConstructors, who subcontracted to GeoStructures, and GeoStructures later admitted that there were errors made in its geopier foundation system design. Cmp. Ex. F. Clancy contends that Capstone informed it that it would require what would amount to a $20,000,000 fix of the error. Petty Dep. at 151. Eventually, the foundation issue was resolved pursuant to a corrective work plan and recovery schedule outlined by Clancy, Brasfield, and Capstone and the underpinning of the east wing with micro-piles. Cmp. Ex. D. As of January 2012, Clancy and Brasfield had paid approximately $4,000,000 in expenditures under the corrective work plan to resolve the foundation issue. [DE 103-2 at 216].

There is much evidence in the record in the form of deposition testimony and emails regarding the efforts of the joint venture to resolve the foundation error, Clancy's efforts or lack thereof to notify Westchester of Capstone's claim against it, Westchester's contention that Clancy planned to "fake" a claim against itself in order to be reimbursed for expenditures for which was responsible under the terms of its contract with Capstone, and Clancy's contention that Westchester failed to timely respond to its inquiries, failed to visit the construction site at Clancy's request, and failure to issue a coverage opinion upon request so that Clancy could proceed accordingly regarding Capstone's claims.

On May 14, 2012, Westchester issued a letter notifying Clancy that the pollution liability policy does not provide coverage for the claim. [DE 103 Ex. 38]. Specifically, Westchester stated that the "claim" for which Clancy sought coverage is not a "claim" for "damages" as

4

required by the insuring agreement, that there are no sums that Clancy is obligated to pay as damages because of a claim that results from rendering of or failure to render professional services, and that even if the purported claim was a "claim" for "damages" under the policy, exclusions would apply to bar coverage. *Id.*

I.  WESTCHESTER'S DECLARATORY JUDGMENT CLAIM

"[T]he goal of [insurance contract] construction is to arrive at the intent of the parties when the policy was issued." *Woods v. Nationwide Mut. Ins. Co.*, 295 N.C. 500, 505 (1978). In determining coverage issues, the "policy is subject to judicial construction only where the language used in the policy is ambiguous and reasonably susceptible to more than one interpretation. In such cases, the policy must be construed in favor of coverage and against the insurer; however, if the language of the policy is clear and unambiguous, the court must enforce the contract of insurance as it is written." *Allstate Ins. Co. v. Runyon Chatterton*, 135 N.C. App. 92, 94-95 (1999) (citation omitted). "A court faces a conceptually difficult task in deciding whether to grant summary judgment on a matter of contract interpretation." *World-Wide Rights Ltd. P'ship v. Combe Inc.*, 955 F.2d 242, 245 (4th Cir. 1992). Summary judgment is only appropriate where the contract is unambiguous or where any ambiguities can be definitively resolved by extrinsic evidence. *Washington Metro. Area Transit Auth. v. Potomac Inv. Properties, Inc.*, 476 F.3d 231, 235 (4th Cir. 2007).

Thus, in order to enter summary judgment in favor of Westchester on its declaratory judgment claim, the Court would be required to find that the language of the policy is unambiguous or that the extrinsic evidence definitively resolves any ambiguity in the terms and that when enforced the policy provides for no coverage for Clancy on its purported claim arising out of the foundation design error. Though the parties do not dispute the existence of the policy

5

or the joint venture endorsement, they dispute whether Clancy's work pursuant to or under the joint venture agreement is covered by the policy, and the record reflects two understandings of whether the correction of the foundation design error would be construed as Clancy's work under the policy and joint venture endorsement. *Compare, e.g.* Madea Dep. at 176-77; Hoover Dep. At 11-12. "If . . . resort[ing] to extrinsic evidence in the summary judgment materials leaves genuine issues of fact respecting the contract's proper interpretation, summary judgment must of course be refused and interpretation left to the trier of fact." *World-Wide Rights*, 955 F.2d at 245.

There are further disputes of material fact as to whether a proper claim was made against Clancy under the policy, and whether Clancy ever became legally obligated to pay damages. A claim is defined under the policy as a "request or a demand received by [the insured] or [Westchester] for money or services, including institution of suit seeking damages." Cmp. Ex. G. On September 26, 2011, Westchester advised Clancy of its receipt of Clancy's claim regarding the foundation errors and its position on coverage on the facts known thus far, [DE 103-2 at 145], and Capstone notified Clancy and the joint venture on October 1, 2011, that it would be willing to find a resolution to the foundation error while fully reserving its rights and remedies. Cmp. Ex. C. While Capstone did not institute suit and a settlement was reached through a corrective work plan, Cmp. Ex. D, there is a dispute as to whether the settlement constitutes a claim by Capstone against Clancy or would actually provide a bar to coverage under the policy. Facts are further in dispute regarding whether Clancy or the joint venture was legally obligated to pay to "damages" to remedy the foundation error was in fact.

6

Case 5:12-cv-00636-BR   Document 153   Filed 05/23/14   Page 6 of 10

In light of such issues of regarding the interpretation, application, and construction of policy terms to the events surrounding Clancy's participation in the Stanhope Project, the Court finds that entry of summary judgment is inappropriate on plaintiff's declaratory judgment claim.[1]

II. CLANCY'S BREACH OF CONTRACT COUNTERCLAIM

In order to succeed on a claim for breach of contract under North Carolina law, a party must demonstrate the existence of a valid contract, the terms of which were breached. *See e.g. Jackson v. Carolina Hardwood Co., Inc.*, 120 N.C. App. 870, 871 (1995). The parties do not dispute the existence of a valid contract here, but dispute whether Westchester breached its terms by denying coverage and failing to defend or indemnify Clancy for purportedly covered losses. For many of the same reasons discussed above, summary judgment is inappropriate in favor of Clancy on its breach of contract counterclaim. For Westchester to be found as a matter of law to have breached the insurance contract, there must be no disputed issues of fact as to whether the work regarding the foundation design error was covered by the contract, whether Capstone made a proper claim against Clancy under the policy, and whether Clancy was in fact obligated to pay damages. Clancy's motion for summary judgment is therefore denied.

III. CLANCY'S TORTIOUS BREACH OF CONTRACT CLAIM

Westchester is entitled to summary judgment on Clancy's tortious breach of contract claim. "[U]nder some circumstances [North Carolina] law permits the recovery of punitive damages on claims for a tortious, bad faith refusal to settle under an insurance policy, even though, as in this instance, the refusal to settle is also a breach of contract." *Dailey v. Integon Gen. Ins. Corp.*, 75 N.C. App. 387, 395 (1985). In order to recover for tortious breach of an insurance contract, an insured must show that the refusal to pay on the insurance contract was

---

[1] Westchester has not briefed an argument supporting summary judgment on its alternative breach of contract claim against Clancy, and thus the Court does not address such claim here.

7

based not on honest disagreement or innocent mistake, but rather on "malice, oppression, willfulness and reckless indifference to consequences." *Id.* at 396.

Though there is much dispute present in the record regarding when and whether Clancy notified Westchester of a claim against it, the record does not support that Westchester acted with malice, oppression, or a reckless indifference to consequences. Where courts have found that a refusal to settle an insurance claim was an act of bad faith there has been ample evidence to show not only delay in investigation but also other aggravating factors such as the offer of a woefully low settlement amount, reliance on estimation of damage and repairs submitted by a clearly unqualified professional, and evidence that the insurance company "stirred up hate and discontent" against its insured by making false accusations regarding the insured's participation in the loss. *Dailey*, 75 N.C. App. at 397-397; *see also Cleveland Const., Inc. v. Fireman's Fund Ins. Co.*, 819 F. Supp.2d 477, 484 (M.D.N.C. 2011) (rejecting tortious breach of contract claim on insurance contract where no sufficiently aggravating factors present); *Blis Day Spa, LLC v. Hartford Ins. Grp.*, 427 F. Supp.2d 621, 632 (W.D.N.C. 2006) (where no evidence that insurance company rejected claim it believed to be valid recovery for tortious breach not appropriate). While the record certainly reflects that Westchester does not think Clancy is entitled to indemnity and defense, Clancy has not demonstrated the presence of sufficient aggravating factors, nor an opinion that Westchester's actions were not reasonable or appropriate within industry practices, and summary judgment in favor of Westchester is appropriate on Clancy's tortious breach of contract claim.

## MOTIONS TO STRIKE EXPERT TESTIMONY

Westchester has moved to strike or exclude Clancy's expert witnesses pursuant to Rule 702 of the Federal Rules of Evidence and Rules 16 and 36 of the Federal Rules of Civil

Procedure. Upon review of the report of Dr. Borden, the Court finds that his testimony is relevant regarding the issue of whether the purported claims against Clancy arose out of the rendering or failure to render professional engineering services, which is relevant to the issue of whether Clancy would be entitled to coverage under its professional liability policy. Westchester's request to strike or exclude this evidence is denied. The Court further finds that the report of Clancy's rebuttal expert, Mr. Zandman, was timely and should not be stricken for having been filed in contravention of the Court's scheduling orders. *See Martinez-Hernandez v. Butterball, LLC*, No. 5:07-CV-174-H, 2010 WL 2089251 *12 (E.D.N.C. May 21, 2010) (relying on Rule 26(a)(2)(C)(ii) to permit disclosure of rebuttal expert testimony within thirty days where scheduling order is silent on the issue of expert rebuttal testimony).

As the Court has granted summary judgment in favor of Westchester on Clancy's tortious breach of contract claim, Clancy's motion to exclude Westchester's expert on this issue is denied as moot.

## CONCLUSION

For the foregoing reasons, plaintiff's motion for summary judgment [DE 88] is GRANTED IN PART and DENIED IN PART and defendant's motion for summary judgment [DE 96] is DENIED. Plaintiff's motion to strike or exclude defendant's expert witnesses [DE 93] is DENIED and defendant's motion to strike testimony of plaintiff's expert [DE 95] is DENIED AS MOOT. Defendant's motion for leave to file supplemental reply [DE 120] is further DENIED AS MOOT and defendant's motion to strike plaintiff's response to this Court's order [DE 149] is DENIED.

As summary judgment has not been entered on plaintiff's claims or defendant's breach of contract counterclaim, the clerk is DIRECTED to refer this matter to the assigned United States Magistrate Judge for pretrial conference.

SO ORDERED, this 23 day of May, 2014.

*Terrence W. Boyle*
TERRENCE W. BOYLE
UNITED STATES DISTRICT JUDGE